UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CR-60205-RUIZ

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JOSHUA DAVID LUBITZ,

        Defendant.
_____/

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE
AND SENTENCING MEMORANDUM IN SUPPORT
(MENTAL HEALTH)**

COMES NOW, the Defendant, JOSHUA DAVID LUBITZ, by and through his undersigned attorney, pursuant to United States vs. Booker, 125 S. Ct. 738 (2005), Gall vs. United States, 552 U.S. 38 (2007), and their progeny and requests this Court to impose "a sentence sufficient, but not greater than necessary" to comply with all of the factors set forth in Title 18 USC 3553(a). In this regard, the Defendant specifically requests this Honorable Court to impose a sentence that varies downward from the Advisory Sentencing Guideline Range as set forth in the Pre-Sentence Investigation Report. (PSR). Mr. Lubitz requests that this Court impose a community-based sentence consisting of probation and/or house arrest with special conditions addressing his mental health.

LEGAL BASIS FOR DOWNWARD VARIANCE

Mr. Lubitz requests that the Court consider varying below the advisory guideline range based upon the factors contained in Title 18 USC 3553(a). Based upon Booker and its progeny, an advisory guideline sentence is no longer mandatory. Under Booker, district courts are only

required to give "some weight" to the advisory guidelines. Id.  Section 3553(a) provides, inter alia, that "…[t]he court shall impose a sentence sufficient, but not greater than necessary." A district court's task is to impose a sentence that will adequately (1) "reflect the seriousness of the offense," (2) "promote respect for the law," (3) "provide just punishment," (4) "afford adequate deterrence," (5) "protect the public from further crimes of the defendant," and (6) provide the defendant with any needed training and treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The task is a holistic endeavor that requires the district court to consider a variety of factors, which include: (1) the nature and circumstances of the offense, (2) the defendant's history and characteristics, (3) the kinds of sentences available, (4) the applicable sentencing guidelines range, (5) pertinent policy statements of the Sentencing Commission, (5) the need to provide restitution to any victims, and (6) the need to avoid unwarranted sentencing disparities. Id. § 3553(a).

Further, a court "may not presume that the [advisory] guideline range is reasonable". Gall, 128 S.Ct. at 596-97 (emphasis added); see also, United States v. Campbell, 491 F.3d 1306, 1313-1314 (11th Cir. 2007).  Thus, after making an "individualized assessment" of the Section 3553(a) factors based on the facts presented, this Court has the power to grant a variance from the advisory guidelines range to whatever extent it deems warranted.. In this case, the Defendant's mental health clearly was a contributing factor that this Court should consider in applying the 3553(a) factors to determining a "sufficient but not greater than necessary" sentence.

## COURSE OF PROCEEDINGS

The incident that has resulted in the underlying charge in this case took place on August 17, 2022 while Joshua Lubitz voted at the Sunrise Senior Center during early voting in the summer primary. Mr. Lubitz was not arrested at that time, but instead, Baker Acted by the police and taken to University Pavillion Hospital in Tamarac, Florida for observation. The following day Mr. Lubitz was transported to Broward General Hospital in Fort Lauderdale and was subsequently deemed not to be a danger to himself or others and released. On October 6, 2022, a grand jury indicted Mr. Lubitz for a violation of Title 52 U.S.C. 20511(1)(B), Intimidation in Voting. Mr. Lubitz appeared before the Court for his initial appearance on October 7, 2022 and was released on bond. Mr. Lubitz has been in compliance with all the terms and conditions of his pretrial release while the case has been pending.

During the pendency of this case, the undersigned filed a notice of expert evidence of a mental health condition, dated December 20, 2022. [DE 18] and provided the Government with a copy of Joshua Lubitz's Comprehensive Psychological Examination Report that was conducted by Michael Brannon. Psy.D. The Government subsequently filed their motion for pretrial mental health examination for determination of mental health conditions, dated December 22, 2022. [DE 21]. The government retained Harley V. Stock, Ph.D., to conduct their evaluation and report.

On May 10, 2023, Mr. Lubitz pled guilty to the single count Indictment. The parties entered into a plea agreement where the government amongst other things agreed that they would not object to a motion by the defense for a downward variance, although they reserved their right as to the extent of the variance. Sentencing has been set for Monday, July 24, 2023 at 2:00 PM.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

While the offense conduct contained in paragraphs 7 through 9 of the PSR [DE 44], outlines the events at the Sunrise Senior Center on the day in question, the actual responses from the poll workers who witnessed and overheard Mr. Lubitz, gives a clearer picture of what actually took place, including the reaction of the poll workers and Mr. Lubitz behavior. The responses from Mr Lubitz' family members, including his parents and his sister immediately after the incident also provide appropriate background for the Court to consider in imposing sentence. Provided to the Court and incorporated into this motion is an approximate 13-minute video that was created by the undersigned counsel.[1] This short video contains portions of surveillance video at the Sunrise Center (no audio) and edited clips of the body worn camera video (BWC) captured by responding officers. The Court is asked to watch the video in support of the motion for downward variance. Most, if not all of the witnesses drew observations that day that are consistent with the symptoms of Mr. Lubitz's mental health condition.

THE DEFENDANT'S HISTORY AND CHARACTERISTICS

Joshua Lubitz is a quiet, unassuming and isolated man who is approaching middle age. The ongoing support of his close family is the best aspect of his life. His mother is a retired educator who inspired her 3 children to apply themselves academically and to find careers in which they could flourish. All the Lubitz children performed well in school, and had no disciplinary issues (not even detention). They all attended Florida universities. The eldest son, Mike, has a popular South Florida radio/digital streaming business as a host/producer and as a

---

[1] The video has been shared with the Court and Government via Google Drive. File name: Joshua David Lubitz Sentencing.mov (1.21 GB)

real estate professional, while younger sister Nicole is an educator like her mother. Mike and Nicole graduated from their universities.

Mr. Lubitz completed his junior year at the University of Central Florida, but his advancing mental health conditions complicated his ability to concentrate and to focus on academics. He was not well enough to finish the final year. Mr. Lubitz invested years to reach this point.

Mike Lubitz and Nicole Bohadana are both married. Nicole has 2 sons from her marriage and 2 step-children.  Mr. Lubitz maintains a close relationship with his young nephews and has taken on a quasi-employee role as babysitter for his very busy sister. With a full-time job, 4 children, and the responsibilities of managing a household, Mrs. Bohadana needs reliable childcare. Mr. Lubitz relishes his time with his nephews, and is creative about designing outings that will both entertain and educate them. Their mother trusts her brother and he has never let her or them down. It is an important contribution that Mr. Lubitz makes for his family and carries the added benefit of being a source of self-esteem.

As the Court can see Mr. Lubitz has plenty of family support. The letters that have been provided to this court in a separately filed submission [DE 52] show the strong bond that this family has for one another. Mr. Lubitz's parents and siblings are acutely familiar with his mental health disability, and accept him as any family would with a sibling with special needs.

MENTAL HEALTH HISTORY

From interviews with Mr. Lubitz and his parents, it appears he had untreated mental health symptoms as early as the second grade. What was then considered hyperactivity and resistance to homework may have been signs of psychiatric issues. His parents recall that he

always mumbled to himself, as a child, a behavior that continues to this day. Freshman year in college, he became so distressed that his parents brought him home. He has been hospitalized twice for severe anxiety, and was Baker Acted during this case and released within 24 hours. It is important to note, from the records reviewed and family interviews, at no time has anyone suggested that he is a danger to himself or others.

It is also important to note that the PSR states:

**"PART F. RECOMMENDED SPECIAL CONDITIONS OF SUPERVISION** 72. Mental Health Treatment: The defendant shall participate in an approved inpatient/outpatient mental health treatment program. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third-party payment."

Given Mr. Lubitz's long history of mental health symptoms, his in- and outpatient treatment, evaluations from his treating psychiatrist, and multiple psychological evaluations, the special condition of mental health treatment is understandable and we support this finding.

In 2002, Mr. Lubitz attended his first counseling session. When his insurance provided coverage, Mr. Lubitz found treatment resources to deal with his anxiety and Obsessive-Compulsive Disorder (OCD). During his early twenties, he was on an upward trajectory professionally and was relatively stable; however, he could not sustain his employment. He has proceeded on a downward spiral to such a degree that he has lived with his parents for the past 10 years and is now wholly supported by them. He is desperate to get weekly counseling, but cannot afford insurance to cover the costs. After extended unemployment, caused by his mental health problems and exacerbated with the Pandemic and dearth of jobs, Mr. Lubitz decided to apply for benefits. He's been waiting more than a year. While being denied the first time is the norm, the Agency has been encouraging him and gave him an online site to check

progress. They also recently called his mother to get extra information for his application. All he can do now is wait.

According to the forensic psychological evaluation performed by Michael P Brannon, Psy.D., 11760 W. Sample Road, Suite 103 Coral Springs, FL 33065, Mr. Lubitz, "mental health history at the time of evaluation included the following DSM-5-TR Diagnoses: Obsessive-Compulsive Disorder and Cannabis Use Disorder (the latter reportedly in remission at this time). The examinee reported numerous symptoms of a major mental disorder. Telephone interviews with the examinee's parents corroborated the examinee's history of mental illness and ongoing treatment for the symptoms of that condition.

Psychological testing resulted in findings of stress, somatic complaints, anxiety, and social isolation. Validity testing designed to assess for response distortion did not reveal any indications of poor effort or malingering. Prior mental health records revealed a diagnosis of Obsessive-Compulsive Disorder (OCD) and the prescription of psychotropic medication for that condition."  Videos of the examinee's actions on the date of the instant offense and his interactions with police provide clear indications of his mental health disorder, including social discomfort and excessive verbalizations. The same behaviors that were reported by witnesses and observed in the videos mentioned above were noted to have occurred throughout the examinee's clinical interview and psychological testing with this examiner.

The examinee should continue to comply with his currently prescribed regimen of psychotropic medication. He would also benefit from participation in weekly individual counseling sessions with a mental health professional specializing in the treatment of anxiety

disorders. The examinee's prognosis for a successful treatment outcome was determined to be good at this time."

This is Mr. Lubitz's first felony conviction. No one in his extended family has been in trouble before. From the first time Law Enforcement encountered him in the present case, Mr. Lubitz has been fully cooperative. Mr. Lubitz wishes to move forward and to use this experience constructively to help him better cope with his mental health issues. He has become more cognizant of his condition, especially the symptoms that have resulted in his constant mumbling and talking to himself which has permeated for a long time, yet not publicly noticed by anyone to the degree it has been noticed and affected him in this case. Clearly, having a felony conviction is going to make the journey back to productivity more difficult for Mr. Lubitz, but not impossible. With the strong support of his family and community- based supervision, including getting and maintaining ongoing counseling that his chronic OCD requires, the prognosis for Mr. Lubitz is good.

Finally, the protection of the public can be achieved by Mr. Lubitz being supervised in the community on probation or house arrest with special conditions addressing his mental health.

## CONCLUSION

WHEREFORE, the Defendant, JOSHUA DAVID LUBITZ, for all of the reasons set forth above, respectfully requests this Honorable Court to impose a sentence that varies downward from the advisory guideline range as permitted by 18 USC 3553(a). A community-based sentence consisting of probation and/or house arrest combined with special conditions addressing Mr Lubitz's mental health is clearly within this Court's authority and discretion. Moreover, such a downward variance sentence is just and reasonable, fair and appropriate.

Respectfully submitted by,

JONATHAN S. FRIEDMAN, P.A.
ATTORNEY FOR JOSHUA DAVID LUBITZ
101 N.E. 3RD AVE.
SUITE 1500
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE: (954) 713-2820
FACSIMILE: (754) 301-5109
EMAIL: JFRIEDMANLAWFIRM@GMAIL.COM

/s/ Jonathan Friemdan
_____
JONATHAN S. FRIEDMAN, ESQ.
FLORIDA BAR NUMBER: 973297

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 18, 2023, the undersigned attorney electronically filed the foregoing document with the Clerk of the Court, United States Attorney's Office and other counsel of record, if any, using CM/ECF and has served same via U.S. Mail to those counsel(s) or individuals, if any, who are not authorized to receive electronically Notice of Electronic Filing.

/s/ *Jonathan Friemdan*

_____
JONATHAN S. FRIEDMAN, ESQ.